# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. MARCOS PEREZ-TREVINO, Defendant. | Case No. CR15-2037<br>REPORT AND RECOMMENDATION |

On the 1st day of April 2016, this matter came on for hearing on the Motion to Suppress Evidence (docket number 194) filed by Defendant Marcos Perez-Trevino on March 16, 2016. The Government was represented by Assistant United States Attorney Lisa C. Williams. Defendant appeared in court and was represented by his attorney, Rockne Cole.

## I. PROCEDURAL HISTORY

On August 26, 2015, Defendant and ten others were charged by indictment with one count of conspiracy to distribute methamphetamine. Defendant was arraigned on November 24, 2015. Trial was initially scheduled for January 25, 2016, but was later continued to May 2 and consolidated with the trial of the other defendants. At Defendants Becerra's and Castellanos' requests, the trial for all defendants was continued again to August 8.

## II. ISSUE PRESENTED

Defendant challenges the admissibility of evidence collected during a traffic stop in Oklahoma on August 12, 2015. Defendant argues the inventory search of the vehicle was unlawful, and evidence of the drugs discovered in the car should be suppressed.

## III. RELEVANT FACTS

On August 12, 2015, Officer Thomas Scott Fisher of the Chouteau, Oklahoma, Police Department was on routine patrol when a car passed by with a malfunctioning taillight. Fisher conducted a routine traffic stop. Defendant Marcos Perez-Trevino was driving the vehicle and was accompanied by another male in the front passenger seat. Defendant seemed nervous when Fisher first approached the car, although Fisher acknowledged it is not uncommon for a person stopped by a law enforcement officer to be nervous. When Fisher asked Defendant for a driver's license, Defendant produced an "ID card" and said he had a license in Texas. At Fisher's request, Defendant accompanied Fisher back to the squad car.

With Defendant sitting in the front passenger seat of the squad car, Officer Fisher observed the carotid artery in Defendant's neck was "pulsing," he was sweating, and he "wouldn't make eye contact" with Fisher. According to Fisher, Defendant was "overly apologetic" for the nonfunctioning taillight. Fisher checked with "dispatch" regarding Defendant's license and was advised that Defendant was not eligible to drive. Fisher also checked on the passenger's driver's license and was advised that it was suspended. That is, neither Defendant nor the passenger were legally authorized to drive. Fisher determined Defendant would be arrested and the car would be towed. According to Fisher, once Defendant knew the car was going to be impounded, he was "very adamant" that it just be left on the side of the road or that someone be permitted to come and pick it up.[1] At that point, Defendant was arrested for driving without a license.

Officer Fisher then conducted an inventory search of the vehicle. Fisher testified that as soon as he leaned into the vehicle from the passenger side, with his face "basically

---

[1] The interaction between Officer Fisher and Defendant was recorded on Fisher's body camera and introduced as Government's Exhibit 4.

directly over the center console," he could smell the odor of "raw marijuana."[2] Upon opening the center console, Fisher found a plastic sack containing a green leafy substance, which was later identified as marijuana. Under the passenger seat, Fisher found a folded one-dollar bill that contained a clear crystal substance, which was later determined to be methamphetamine. In the backseat, there was a large cooler. The cooler contained food, drinks, and a large ziploc bag containing 877 grams of methamphetamine.

After locating the methamphetamine inside the car, Officer Fisher returned to the squad car and read Defendant a *Miranda* warning. Fisher testified that "before I could even ask him a question," Defendant told Fisher he had located "it" at a rest stop in Texas. Fisher assumed Defendant was referring to the methamphetamine in the cooler. Defendant told Fisher that "his plan was to take it to Iowa and sell it to make money."

## IV. DISCUSSION

Officer Fisher testified Defendant was pulled over because one of the taillights on the passenger side of the car was not functioning. According to Fisher, Oklahoma law requires that any manufacturer-installed lights on a vehicle be working. Defendant conceded at the hearing that the stop was lawful. Defendant does *not* argue that Oklahoma law only requires one functioning taillight on the passenger side and, even if that is the law, the argument would be unavailing. *United States v. Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) (an objectively reasonable mistake of law does not invalidate a vehicle stop). *See also Heien v. North Carolina*, \_\_\_\_ U.S. \_\_\_\_, 135 S. Ct. 530, 190 L. Ed. 2d 475 (2014) ("Because the officer's mistake about the brake-light law was reasonable, the stop in this case was lawful under the Fourth Amendment.").

---

[2] Officer Fisher can be heard on the video recording taking several deep breaths, but his smelling marijuana when he leaned into the car was apparently not included in his police report.

Similarly, Defendant concedes that Officer Fisher was permitted to ask him routine questions and, after determining Defendant was not authorized to drive, place him under arrest. Defendant argues, however, that his car was improperly impounded and the inventory search was unlawful.

The law regarding inventory searches is well-established, and was recently summarized by the Eighth Circuit Court of Appeals as follows:

> Inventory searches are one exception to the general rule that searches conducted without a warrant are unreasonable. The purpose of an inventory search is to protect "owner's property while it remains in police custody," as well as to protect "police against claims or disputes over lost or stolen property" and "from potential dangers." An inventory search must "be reasonable under the totality of the circumstances and may not be a ruse for general rummaging in order to discover incriminating evidence." "The reasonableness requirement is met when an inventory search is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime." However, "inventory searches need not be conducted in a totally mechanical, all or nothing fashion." And, "even when law enforcement fails to conduct a search according to standardized procedures, this does not mandate the suppression of the evidence discovered as a result of the search." "There must be something else; something to suggest the police raised 'the inventory-search banner in an after-the-fact attempt to justify' a simple investigatory search for incriminating evidence."

*United States v. Smith*, 715 F.3d 1110, 1117-18 (8th Cir. 2013) (all citations omitted).

On July 1, 2013, the Chouteau Police Department adopted an "Impoundment of Vehicles" policy. *See* Government's Exhibit 1. The policy provides that a vehicle shall

be impounded for "safekeeping" if a subject is arrested.[3] Furthermore, the vehicle may be towed under the public assistance section "[w]hen, following arrest of the owner/operator or for other reasons, the vehicle cannot be left at the scene without substantial risk of theft from or damage to the vehicle or personnel property contained therein."[4] The policy provides generally that "[v]ehicles impounded or otherwise taken into custody by personnel of the Chouteau Police Department shall be inventoried in a manner consistent with this policy."[5]

If a vehicle is to be impounded, the policy sets forth the manner in which the inventory is to be conducted:

> 1. It is the duty of all officers, who impound motor vehicles, to perform an inventory of those vehicles.
>
> 2. The purpose of this inventory will be to ensure a proper accounting of all property in or attached to the vehicle in order to protect the officer from liability of assumed damages and/or missing property.
>
> 3. The officer performing the inventory will conduct a thorough and uniform inventory of the vehicle and its compartments.

Impoundment of Vehicles policy at 3, ¶ III(A)(1)-(3). Furthermore, the policy provides that "Officers should take all necessary precautions when towing a vehicle to properly

---

[3] Impoundment of Vehicles policy at 2, ¶ II(1)(c).

[4] *Id.* at 3, ¶ II(G)(3).

[5] *Id.* at 1, ¶ A(3).

5

search and inventory a vehicle. An inventory search is intended to protect the citizen, the officer and the wrecker company from claims of loss and theft."[6]

In his motion and supporting brief, Defendant sets forth the law regarding vehicle stops and inventory searches, but he does not assert *how* Officer Fisher's actions in this case were violative of the Constitution. At the time of hearing, Defendant was unwilling to concede that the decision to impound the vehicle was lawful, but he was unable to cite any authority to support his claim that impounding the vehicle under these circumstances violates the Constitution. Defendant concedes he was lawfully stopped and arrested. After it was determined that his passenger was not lawfully entitled to drive, I find no constitutional violation in the decision to have the car towed from the scene, where it was parked illegally.

In *Colorado v. Bertine*, 479 U.S. 367 (1987), the Court rejected the respondent's argument that an inventory search was unconstitutional because "departmental regulations gave the police officer's discretion to choose between impounding his van and parking and locking it in a public parking place." *Id.* at 375. The Court concluded that the exercise of police discretion is permitted "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." *Id.* Here, Officer Fisher decided to tow Defendant's vehicle pursuant to a standardized policy. The Chouteau Police Department impoundment of vehicles policy authorizes, and perhaps requires, the impoundment of a vehicle if the driver has been arrested or the vehicle cannot be left at the scene without substantial risk of theft from or damage to the vehicle. Therefore, the decision to impound and tow the vehicle does not violate the Fourth Amendment. *See also United States v. Arrocha*, 713 F.3d 1159, 1163 (8th Cir. 2013) (Although an officer exercised "some discretion" in deciding to tow the

---

[6] *Id.* at 3, Regulations (2).

defendant's vehicle, "he acted within the degree of 'standardized criteria' or "established routine' that our prior towing cases require.").

Pursuant to the policy adopted by the Chouteau Police Department, it was then incumbent upon Officer Fisher to conduct a thorough inventory of the vehicle and its compartments. Almost immediately after beginning the inventory search in this case, Officer Fisher found marijuana in the center console. Fisher testified that he could smell marijuana when he leaned into the car, thus converting the inventory search to a probable cause search.[7] The Government does *not* rely on probable cause, however, and instead argues that Fisher conducted a valid inventory search.

Defendant's brief is silent on the issue of *how* Officer Fisher's inventory search violated the Fourth Amendment. At the time of hearing, however, Defendant seemed to argue that opening the center console, or the cooler in the backseat, violated the impoundment of vehicles policy. Defendant concedes the policy directs the officer to conduct a "thorough" inventory of the vehicle and its "compartments," but argues such a policy "is not sufficiently standardized." Again, Defendant offers no authority for this argument.

In *Bertine*, the respondent was arrested for drunk driving and, before a tow truck arrived, an officer inventoried the contents of his van. The officer opened a closed backpack and found a nylon bag containing metal canisters. Opening the canisters, the officer discovered drugs, paraphernalia, and cash. 479 U.S. at 369. The Colorado Supreme Court found the search violated the Fourth Amendment. The United States Supreme Court reversed. The Court rejected the state court's opinion that, before

---

[7] "The so-called 'automobile exception' permits police to conduct a warrantless search of an automobile if, at the time of the search, they have probable cause to believe that the vehicle contains contraband or other evidence of a crime." *United States v. Kennedy*, 427 F.3d 1136, 1140-41 (8th Cir. 2005).

inventorying a container, the police must "weigh the strength of the individual's privacy interest in the container against the possibility that the container might serve as a repository for dangerous or valuable items." *Id.* at 374. The Court concluded it would be unreasonable to expect police officers "to make fine and subtle distinctions in deciding which containers or items may be searched and which must be sealed as a unit." *Id.* at 375 (quoting *Illinois v. Lafayette*, 462 U.S. 640, 648 (1983)).

> When a legitimate search is underway, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand.

*Bertine*, 479 U.S. at 375 (quoting *United States v. Ross*, 456 U.S. 798, 821 (1982)).

The facts in this case are similar to those in *United States v. Davis*, 882 F.2d 1334 (8th Cir. 1989). There, the defendant was stopped for speeding and arrested after it was discovered he was driving without a valid license. Following standard local police procedure, the officer determined the car would have to be towed and he proceeded to conduct an inventory search of the car. The officer spotted two paper bags on the passenger-side front floorboard, one of which was partially opened. The officer opened both bags and found contraband. Citing *Bertine*, the Court concluded that there was no persuasive reason for finding the inventory search to be unconstitutional. *Id.* at 1339.

Similarly, I find no constitutional violation here. Defendant concedes he was lawfully stopped and arrested. Pursuant to established policy, Officer Fisher determined the vehicle would have to be towed. Fisher then conducted a lawful inventory search pursuant to a policy adopted by the Chouteau Police Department. Opening closed compartments, or a cooler in this case, during an inventory search is not violative of the Fourth Amendment.

8

## V. RECOMMENDATION

I respectfully recommend that the Motion to Suppress Evidence (docket number 194) filed by Defendant Marcos Perez-Trevino be **DENIED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 1, 2016.*

DATED this 11th day of April, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA