**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>MARCOS PEREZ-TREVINO,<br><br>Defendant. | No. 15-CR-2037-LRR<br><br>**ORDER** |

_____

*TABLE OF CONTENTS*

*I.    INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*
*II.   RELEVANT PROCEDURAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . *1*
*III.  STANDARD OF REVIEW* . . . . . . . . . . . . . . . . . . . . . . . . . *2*
*IV.   RELEVANT FACTUAL BACKGROUND* . . . . . . . . . . . . . . . . . . . . *3*
*V.    ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *5*
*VI.   CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*

*I.  INTRODUCTION*

The matter before the court is Defendant Marcos Perez-Trevino's Objections to Report and Recommendation ("Objections") (docket no. 247), timely filed in response to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation (docket no. 242), which recommends that the court deny Defendant's "Motion to Suppress Evidence" ("Motion") (docket no. 194).

*II.  RELEVANT PROCEDURAL BACKGROUND*

On August 26, 2015, a grand jury returned a one-count Indictment (docket no. 12) charging Defendant and ten others with one count of conspiracy to distribute

methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The Indictment also contains a forfeiture allegation. On March 16, 2016, Defendant filed the Motion. On March 25, 2016, the government filed a Resistance (docket no. 214). On April 1, 2016, Judge Scoles held a hearing on the Motion and several other matters not relevant to this Order. *See* April 1, 2016 Minute Entry (docket no. 233); *see also* Hearing Transcript (docket no. 234). Defendant appeared in court with his attorney, Rockne Cole. Assistant United States Attorney Lisa Williams represented the government. On April 12, 2016, Judge Scoles issued the Report and Recommendation, which recommends that the court deny the Motion. On April 26, 2016, Defendant filed the Objections. The government has not filed a response to the Objections and the time for doing so has expired. Defendant requests oral argument on the Objections. However, the court finds that oral argument is unnecessary. The Report and Recommendation and the Objections are fully submitted and ready for decision.

### III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error

for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *See Lothridge*, 324 F.3d at 601. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

### IV. RELEVANT FACTUAL BACKGROUND

On August 12, 2015, Officer Thomas Fisher of the Chouteau, Oklahoma Police Department observed a white Oldsmobile Intrigue with a passenger-side taillight out.[1] Officer Fisher initiated a traffic stop of the vehicle and made contact on the passenger side. Defendant was driving the vehicle accompanied by a passenger, Bradley Carter. Officer Fisher requested identification from Defendant. Defendant produced an ID card and stated that he had a license in Texas. Defendant then accompanied Officer Fisher to the squad car and was seated in the front passenger seat. According to Officer Fisher, Defendant appeared nervous and was overly apologetic about the taillight. Officer Fisher requested that dispatch run Defendant's driver's license and was informed that Defendant was not eligible to drive. At that time, Officer Fisher placed Defendant under arrest. Officer Fisher also learned that Carter's license was suspended.

Because neither occupant of the vehicle was authorized to drive, Officer Fisher believed that police policy required him to impound the vehicle. Hearing Transcript at 2 (stating that police "cannot leave a vehicle that [they] have stopped on the side of the road"). Upon learning that the vehicle was going to be impounded, Defendant became agitated and requested that he be allowed to leave the car on the side of the road or park it somewhere for someone else to pick it up. Officer Fisher determined that the vehicle

---

[1] The passenger-side taillight in question can be seen on Officer Fisher's squad car's dash camera footage, admitted as Government Exhibit 5. *See* April 1, 2016 Minute Entry.

should be impounded and proceeded to conduct an inventory of the vehicle's contents as provided by police policy.[2]

As Officer Fisher conducted the inventory he smelled what he describes as the "odor of raw marijuana" emanating from the center console. *Id.* at 7. He opened the center console and found a plastic sack containing a green leafy substance that was later identified as marijuana. He continued his inventory and found a folded dollar bill under the passenger seat that contained a crystalline substance that was later identified as methamphetamine. In a compartment on the driver's side door, Officer Fisher found two field methamphetamine test kits.[3] In the back seat, there was a large, closed, blue cooler. After opening it, Officer Fisher found various food, drinks and a large ziploc bag containing approximately 877 kilograms of methamphetamine.[4] Following his inventory

---

[2] The "Impoundment of Vehicles" policy ("Policy") has been filed as Government Exhibit 1 (docket no. 241-1).

[3] Officer Fisher did not testify regarding the test kits at the hearing, however, footage from Officer Fisher's body camera footage, admitted as Government Exhibit 4, depicts the discovery of the test kits. *See* April 1, 2016 Minute Entry.

[4] Defendant objects to an allegedly "material omission of fact" in the Report and Recommendation. Brief in Support of the Objections (docket no. 247-1) at 5 (formatting omitted). He states that Judge Scoles failed to "make it clear that the [z]iploc baggie containing methamphetamine was found within a closed storage container." *Id.* However, as Defendant concedes, the fact that the cooler was closed is "implied" in the Report and Recommendation. *Id.* In the Report and Recommendation's discussion regarding the cooler, Judge Scoles concluded that "[o]pening closed compartments, or a cooler in this case, during an inventory search is not violative of the Fourth Amendment." Report and Recommendation at 8. Therefore, the fact that Judge Scoles may not have explicitly called the cooler a "closed container" in the factual section of the Report and Recommendation was neither prejudicial nor material. Accordingly, the court shall overrule this portion of the Objections.

of the vehicle, Officer Fisher completed a Stored Vehicle Report listing the items he found in the vehicle.[5]

At that time, Officer Fisher returned to the squad car and advised Defendant of his *Miranda* rights. However, before Officer Fisher could question Defendant about the cooler's contents, Defendant stated that he had located "it" at a rest stop in Texas, and that he planned to sell it in Iowa, believing it to be cocaine. Officer Fisher understood Defendant's statement to refer to the methamphetamine in the cooler.

## V. ANALYSIS

In the Objections, Defendant argues that Judge Scoles erred in finding that the inventory of the vehicle pursuant to the Policy was constitutional. A well-established exception to the Fourth Amendment's warrant requirement is the so-called inventory search exception. "Law enforcement officers may conduct a warrantless search when taking custody of a vehicle to inventory the vehicle's contents 'in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger.'" *United States v. Ball*, 804 F.3d 1238, 1240-41 (8th Cir. 2015) (quoting *United States v. Hartje*, 251 F.3d 771, 775 (8th Cir. 2001)). However, "[o]fficers 'may not raise the inventory-search banner in an after-the-fact attempt to justify what was . . . purely and simply a search for incriminating evidence . . . .'" *Id.* at 1241 (quoting *United States v. Beal*, 430 F.3d 950, 954 (8th Cir. 2005)). In conducting the inventory search, officers need not turn a blind eye toward "potentially incriminating items that they might discover in the course of an inventory search, as long as their sole purpose is not to investigate a crime." *Id.* (quoting *Beal*, 430 F.3d at 954). An inventory search must still comport with the Fourth Amendment's demand of reasonableness. *Id.* "The reasonableness requirement is met when an inventory search

---

[5] The Stored Vehicle Report has been filed as Government Exhibit 3 (docket no. 214-3).

is conducted according to standardized police procedures, which generally remove the inference that the police have used inventory searches as a purposeful and general means of discovering evidence of a crime." *United Sates v. Smith*, 715 F.3d 1110, 1117 (8th Cir. 2013) (quoting *United States v. Taylor*, 636 F.3d 461, 464 (8th Cir. 2011)). Even when officers fail to strictly follow standardized procedure, suppression is not warranted unless there is "something else" that suggests that the inventory search was merely an illegitimate attempt to conduct a search for incriminating evidence. *Id.* at 1117-18 (quoting *United States v. Rowland*, 341 F.3d 774, 780 (8th Cir. 2003)).

Defendant argues that the Policy is not sufficiently standardized to authorize Officer Fisher to conduct an inventory search of the vehicle. Brief in Support of the Objections at 6-12. He argues that the Policy is "per se defective because it did not provide any limitation on the officer's discretion to conduct an inventory search." *Id.* at 7 (formatting omitted). He argues that, because the Policy does not specifically address searching containers within the vehicle as part of an inventory, it does not provide sufficiently standardized criteria to limit the search of the vehicle. *Id.* at 8. Defendant also states that Officer Fisher did not testify as to any "alternative basis such as department custom to justify the inventory search." *Id.* at 11.

The Policy states, in relevant part:

1. It is the duty of all officers, who impound motor vehicles, to perform an inventory of those vehicles.

2. The purpose of this inventory will be to ensure a proper accounting of all property in or attached to the vehicle in order to protect the officer from liability of assumed damages and/or missing property.

3. The officer performing the inventory will conduct a thorough and uniform inventory of the vehicle and its compartments.

Exhibit 1 at 3.

6

Defendant argues that the Policy's language that the inventory must be "thorough and uniform" is "no limitation at all." Brief in Support of the Objections at 8. He argues that the Policy is unconstitutional per se and the court should invalidate the inventory search. *Id.* Defendant offers no authority for the proposition that the phrase "thorough and uniform" is constitutionally deficient per se. The Policy directs that searches are to be "uniform" and that they must be confined to the "vehicle and its compartments." The court finds that the Policy provides sufficiently standardized criteria, making inventory searches pursuant to it constitutional. This is especially true when officers are guided by the Policy's overarching concern with "protect[ing] the officer from liability of assumed damages and/or missing property" from the vehicle. Exhibit 1 at 3. Furthermore, a directive that officers search the vehicle's "compartments" plainly encompasses the vehicle's center console where Officer Fisher discovered the marijuana and the driver's side door where Officer Fisher discovered the methamphetamine field test kits. *See, e.g.*, *United States v. Ball*, 804 F.3d 1238, 1241 (8th Cir. 2015) (finding an inventory search of a vehicle's air filter compartment valid where the policy directs officers to search in "areas where an owner or operator would ordinarily place or store property or equipment"); *United States v. Pappas*, 452 F.3d 767, 772 (8th Cir. 2006) (finding an inventory search of the vehicle's engine compartment is a proper area for an inventory search); *United States v. Barry*, 98 F.3d 373, 376-77 (8th Cir. 1996) (finding an inventory search of a vehicle's unlocked glove compartment to be valid). Accordingly, the court shall overrule the Objections to the extent that they argue that the marijuana or methamphetamine field test kids should be suppressed.

Defendant also argues that the court should suppress the methamphetamine found in the blue cooler because the Policy does not specifically address the opening of closed containers. *See* Brief in Support of the Objections at 8-9. Defendant cites the Supreme Court's decision in *Florida v. Wells*, 495 U.S. 1 (1990), in support of this argument. In

7

*Wells*, officers impounded a defendant's vehicle and forced open a locked suitcase in the vehicle's trunk, which held a large amount of marijuana. *Wells*, 495 U.S. at 2. The police conducted the inventory search pursuant to police policy, but such policy was silent as to whether police were authorized to open closed containers within the vehicle. *Id.* at 4. The Supreme Court found that inventory policies need not authorize officers to open closed containers in a "totally mechanical 'all or nothing' fashion," but that the policy did need to contain some "standardized criteria" to limit the officer's discretion in conducting the inventory search. *Id.* By way of example, the Supreme Court stated that "it would be . . . permissible . . . to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors." *Id.* However, because the department in *Wells* "had no policy whatever with respect to the opening of closed containers encountered during an inventory search," the Supreme Court held that the search "was not sufficiently regulated to satisfy the Fourth Amendment" and that the marijuana was properly suppressed. *Id.* at 4-5.

Since *Wells*, several cases have addressed various defendants' arguments that inventory policies were constitutionally deficient because they did not specifically address the opening of closed containers. Courts addressing such arguments have declined to require that police policies explicitly mention "closed containers," so long as the policies contain some other language sufficiently limiting officers' discretion. For example, the Seventh Circuit Court of Appeals has held that, "[w]hile the . . . policy [at issue did] not use the buzz words 'closed container' . . . [it was] convinced that the term 'contents' provides sufficient elucidation to satisfy the requirements of *Wells*." *United States v. Wilson*, 938 F.3d 785, 789 (7th Cir. 1991); *see also United States v. Lowe*, 9 F.3d 43, 46 (8th Cir. 1993) (citing *Wilson* with approval). More recently, the Third Circuit Court of Appeals recognized that a policy need not contain any "magic words relating specifically to closed containers" and that a policy which directed officers to "search all accessible

areas of the vehicle . . . to determine if they contain 'any . . . personal property of value,' or other effects" was sufficient under *Wells*. *United States v. Mundy*, 621 F.3d 283, 291-92 (3d Cir. 2010); *see also United States v. Matthews*, 591 F.3d 230, 237 (4th Cir. 2009) (holding that a policy that required "[a] complete inventory [to] be taken on all impounded or confiscated vehicles including the interior, glove compartment and trunk" complied with *Wells* (alterations in original)); *United States v. Thompson*, 29 F.3d 62 (2d Cir. 1994) (finding that a policy that directs officers to "inventory the *contents* of the vehicle" and that "[i]t is not necessary to enter *locked portions*" of a vehicle complied with *Wells*); *United States v. Foots*, 340 Fed. App'x 969, 973-74 (9th Cir. 2009) (unpublished decision) (finding that a policy requiring "inventorying the subject's property entirely" authorized the opening of closed containers, especially when "the inventory search was conducted pursuant to a standardized procedure appropriately limited by a policy of safekeeping"); *United States v. Hall*, 391 F. Supp. 2d 760, 867 (N.D. Iowa 2005) (distinguishing *Wells* and concluding that a policy requiring police to inventory "the contents" of a vehicle and to make a "complete inventory" permits officers to open closed containers within the vehicle), *aff'd*, 497 F.3d 846 (8th Cir. 2007).

Here, the Policy states that officers must conduct the inventory search "to ensure a proper accounting of all property in or attached to the vehicle" and that such inventory search should be conducted in "a thorough and uniform" manner, limited to "the vehicle and its compartments." Exhibit 1 at 3. The court finds that, when considered together, the language in parts one through three of the Policy as reproduced above is sufficiently similar to language used in the policies at issue in cases such as *Wilson*, *Mundy* and *Hall* to find the Policy valid and the inventory search done pursuant to it similarly valid. The Policy sufficiently limits officers' discretion by limiting the area of the search to the "vehicle and its compartments" and requiring that officers detail "all property" in the vehicle. Although the Policy does not specifically mention closed containers, its plain

9

language directs officers to make a complete inventory of all of the contents of the vehicle. The language of the Policy reasonably requires officers to open any unlocked storage containers where property would normally be stored. *See Mundy*, 621 F.3d at 291. Accordingly, the court finds that the Policy complies with *Wells*.

Finally, Defendant argues that *United States v. Kennedy*, 427 F.3d 1136, 1145 (8th Cir. 2005), is analogous to the instant case and is instructive. The court disagrees. In *Kennedy*, police responded to a call from the defendant's girlfriend, who reported that the defendant stole certain property from her. 427 F.3d at 1139. Police eventually arrested the defendant in his car for driving without a license and performed an initial inventory search of the vehicle. *Id.* After the arrest, an officer spoke with the defendant's girlfriend, who told the officer that the defendant was engaged in the distribution of methamphetamine and that he stored a large amount of methamphetamine under a loose speaker in the trunk of his vehicle. *Id.* at 1139-40. Following this discussion, the officer returned to the defendant's vehicle, searched under the loose speaker and discovered two large packages of methamphetamine and $6,000 cash. *Id.* at 1140. The district court suppressed the evidence. In affirming the district court, the Eighth Circuit focused not on whether the policy, on its face, was constitutionally deficient—as Defendant urges here—but rather on whether officers complied with the policy at issue. *Id.* at 1143-45. The Eighth Circuit expressed concern that the government did not present evidence that the officer who conducted the inventory search would have searched under the speaker solely pursuant to the language in the policy and absent the information from the defendant's girlfriend. *Id.* Because the government was unable to demonstrate as much, the Eighth Circuit ruled that the inventory search exception did not apply and suppression was warranted. *Id.*

Here, there is no indication that the inventory search was mere pretext for a general investigatory search. Officer Fisher did not request consent to search the vehicle, which

might, in hindsight, raise the suspicion that the later inventory search was a last-ditch effort to obtain incriminating evidence. Similarly, Officer Fisher did not suspect that he would find any controlled substances inside the vehicle. *See* Hearing Transcript at 6 (Officer Fisher testifying that he did not "smell any suspicious substances coming out of the vehicle" during the initial stop and that he did not "observe anything inside the vehicle that suggested . . . that there could be drugs inside the vehicle"). Therefore, the court finds that the government has met its burden of demonstrating the validity of the inventory search.[6] Accordingly, the court shall overrule the Objections.

## VI. CONCLUSION

In light of the foregoing, the Objections (docket no. 247) are **OVERRULED**, the Report and Recommendation (docket no. 242) is **ADOPTED** and the Motion (docket no. 194) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 10th day of May, 2016.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[6] At the Hearing, Officer Fisher and the government stated that, upon smelling the scent of marijuana from the center console, the search became a probable cause search. *See id.* at 7, 15. However, because the court has found that Officer Fisher's inventory search was valid, the court shall not address this argument. *See also* Report and Recommendation at 7-8 (finding the inventory search valid and declining to rely on the probable cause argument).

11